IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )| |
| ) | |
| ) | |
| vs. ) | CRIMINAL NO. 11-00368-CG |
| ) | |
| PRASTANA TAOHIM, ) | |
| ) | |
| Defendant ) | |

## ORDER

This matter is before the court on the motion of defendant, Prastana Taohim, for New Trial (Doc. 259), the Government's response (Doc. 271), and Taohim's reply (Doc. 272).  For reasons which will be explained below, the court finds that defendant's motion should be denied.

Under FED.R.CRIM.P. 33, upon a defendant's motion, the district court may "vacate any judgment and grant a new trial if the interest of justice so requires." FED.R.CRIM.P. 33(a).  A motion for a new trial pursuant to Rule 33 is based on the presumption that the verdict against the defendant is valid; therefore the burden is on the defendant to demonstrate that a new trial ought to be granted.  WRIGHT AND WELLING, 3 FEDERAL PRACTICE AND PROCEDURE, § 581 (4th ed.).  In the instant case, the defendant's motion asserts that a new trial is required for prosecutorial misconduct, based on the government's alleged improper statements to the jury during closing argument.  "To determine that a prosecutor committed misconduct in his or her argument to a jury '(1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant.'" U.S. v. Thompson, 422

F.3d 1285, 1297 (11th Cir. 2005) (quoting United States v. Gonzalez, 122 F.3d 1383, 1389 (11th Cir. 1997)).  Whether the defendant's substantial rights are prejudicially affected is evaluated in the context of the entire trial and in light of any curative instruction. United States v. Newsome, 475 F.3d 1221, 1227 (11th Cir. 2007); United States v. Mock, 523 F.3d 1299, 1302 (11th Cir. 2008).  A defendant's substantial rights are prejudicially affected "where there is a reasonable probability that but for the remarks, the outcome of the trial would have been different." Newsome, 475 F.3d at 1227.

Defendant did not object to the statements at the time they were made. "Allegations of prosecutorial misconduct are generally waived if not brought to the Court's attention at the first opportunity outside the presence of the jury, failing which the defendant is reduced to a claim of plain error."  U.S. v. Hyatt, 2008 WL 616055, 8 (S.D. Ala. 2008) (citing United States v. Scheer, 168 F.3d 445, 451 (11th Cir. 1999)).  Plain error requires: (1) an error; (2) that is plain or obvious; (3) that "affects the defendant's substantial rights"; and (4) that "seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Perez-Lopez, 2008 WL 185507 at *5 (11th Cir. 2008)(citing United States v. Olano, 507 U.S. 725, 732–34, 113 S.Ct. 1770, 1776–78, 123 L.Ed.2d 508 (1993)).  An error is plain when it is "obvious" or "clear under current law." United States v. Fontenot, 611 F.3d 734, 737 (11th Cir. 2010).  "Whether the error affected a defendants' substantial rights hinges

2

on whether the error affected the outcome of the proceeding." Perez-Lopez, 2008 WL 185507 at *5 (citing United States v. Arbolaez, 450 F.3d 1283, 1291 (11th Cir. 2006)).

Defendant first asserts that the prosecutor improperly invoked religion during closing argument. Defendant objects to the following statements:

> I'm not going to talk as fast, so I'm not going to cover as much territory. So give me strength that I say the right words, that I make the right points.

(Doc. 259-1, TR 29:2-4). Defense counsel states that when the prosecutor made the above statements he looked up to heaven and pointed his hands up; however, such actions were not reflected in the transcript and the undersigned does not recall seeing the prosecutor look or point up during closing argument. Defendant argues that the prosecutors statements were made to appeal to the jury's religious predilections or biases and was likely to stir the passions of the jury. However, as the government points out, there was no mention of prayer, God, religion, or the defendant's religion in the prosecutor's statements. There also had been no mention of religion during the trial. The jury heard testimony that the defendant was from Thailand which defense counsel argues is predominantly Buddhist. However, religion was not an issue at trial and no information was provided concerning the predominant religion of Thailand or the defendant's religion.

Defendant cites a First Circuit case which held that the injection of religion into that case "was flatly wrong and contrary to what the public has a right to expect of

3

government prosecutors." United States v. Cartagena-Carrasquillo, 70 F.3d 706, 713 (1st Cir. 1995). In Cartagena-Carrasquillo, the defendant wore white clothing which was "a possible marker of adherence to a minority religious sect" and the prosecutor made references in closing argument to attending church, lent, to doing the way of the cross ("via crusis"), and to saying prayer. Id. The prosecutor referred to such conduct as conduct in which "we" participate, which "suggested an alliance between the government and a church to which, presumably, many of the jurors, but not the defendant belonged." Id. The defendant in Cartagena-Carrasquillo objected to the reference and the court responded that it would entertain the objection later, but the objection was never raised again, nor was a curative instruction requested. The First Circuit found that it was wrong to inject religion into the case. Id. However, the Court found that the statements did not sufficiently affect the outcome to require reversal. Id. at 714. In making its determination, the Court noted that the conduct was not as egregious as other cases the Court had considered. Id. The Court also found that the general instructions to the jury to perform its duty objectively without any bias or prejudice, to presume the defendant innocent unless guilt was established beyond a reasonable doubt, setting out the elements of the crimes charged and telling the jury that counsel's statements were not evidence, assisted the jury in "keeping to the path before it, free from prejudice." Id. In addition, the Court found that the evidence of guilt was strong. Id.

In the instant case, the prosecutor's conduct, even if we assume he looked and pointed up when he made the statements, was less egregious than the conduct and statements at issue in Cartagena-Carrasquillo.  In the instant case, the prosecutor did not refer to anything "we" do and did not directly mention church, prayer, or use any religious terms that would signify the particular beliefs held by the prosecutor other than his apparent belief that there is someone or something (whether it be God, Buddha, Allah, Adi Parashakti, Zeus or something else) from which he seeks strength.  No objection was made to the statements during trial and no curative instruction was requested.   The court finds that although the statements may have been improper, they were not so blatant or obvious that they would be considered "plain error."

Moreover, this court, like the Cartagena-Carrasquillo Court, instructed the jury to perform its duty objectively without sympathy or prejudice, to presume the defendant innocent unless guilt was established beyond a reasonable doubt, set out the elements of the crimes charged and instructed the jury that anything the lawyers say is not evidence.  The evidence against the defendant was also strong.  As such, the court finds that the prosecutor's statements, seeking strength to say the right words and make the right points, did not affect the defendant's substantial rights or affect the outcome of the proceeding.

Defendant next objects to the prosecutor's misstatement of testimony during closing argument.  Defendant argues that the prosecutor improperly stated that the

5

defendant had testified that the plastic pipes at issue were not on the deck of the vessel during the time in question, when the defendant had merely said that he had not seen the pipes on the deck.  Defendant is correct that he never actually testified that the plastic pipes were not on the deck, but did state at least three times that he never saw them on deck.  This was a fact clearly in contention during the trial as the government offered pictures and testimony to attempt to show that the plastic pipes were obvious and in plain view on the deck and had been seen by other crewmen while the defense attempted to demonstrate that the defendant could not see the pipes from up high on the bridge where the defendant worked as captain of the vessel.  The defendant also offered evidence that there were plastic pipes hidden from view in a storage room.  The government argues that defendant's denial that he saw the plastic pipes on deck implied that they were not there since the government contends that the defendant had to have seen the pipes on deck if they were on deck as witnesses had described.  In closing arguments counsel is permitted "to state his contention as to the conclusions that the jury should draw from the evidence. U.S. v. Johns, 734 F.2d 657, 663 (11th Cir. 1984) (quoting United States v. Morris, 568 F.2d 396, 401 (5th Cir. 1978)).  The court finds that the prosecutor's statement that defendant testified that the plastic pipes were not on the deck was merely an inference arising directly from the evidence produced at trial.  Such statements clearly do not constitute "plain error"

especially in light of the fact that defense counsel explained the testimony of the defendant during closing argument, pointing out the following:

> The captain never said they weren't there. What he said was he didn't see them there. That's different.
> What color was the car in front of the courthouse this morning when you walked in? Do you remember? It's not something you pay attention to. It doesn't mean the car wasn't there. You just didn't see it or it didn't register. It wasn't important to you. And why would it be important to Captain Taohim? It wasn't his job. The chief officer was in charge of taking care of that stuff.
> He didn't say it wasn't there. He said he didn't see it. Or months and months later he doesn't remember having seen it. That's his testimony.
> But the prosecutor would have you believe, as they paraded in a number of witnesses to say, "Oh, yeah, it was there; no, no, it was there," that the captain was trying to say something else.
> He was very clear. He didn't see it.

(Doc. 259-1, TR 25: 14-25). The court finds that the prosecutor's statements regarding the defendant's testimony were not improper and did not affect the defendant's substantial rights or the outcome of the proceeding.

Lastly, defendant contends that the prosecutor made improper and misleading references regarding motive. The prosecutor stated the following:

> Let's look at the different theories that the defense has had. Sometime during the trial the theory has been the Filipinos, the Filipinos, the Filipinos. At one time there was a whistleblower theory. I remember whistleblower coming out. He's argued it was Atiga, Atiga, Atiga and then this is a frame job, this is a frame job.

(Doc. 259-1, TR 34 8-13). Defendant objects to the prosecution having brought up the defense's theory of motivation and the prosecution's reference to whistleblowers.

Defendant argues that the government should not be allowed to raise these issues as the court had previously denied defendant's motion for the court to take judicial notice that the government routinely moves the court to issue a monetary reward to whistleblowers and because the court sustained the government's objections to the defendant questioning a witness about whether the Coast Guard received a report that there was a whistleblower onboard the vessel and whether the Coast Guard can issue rewards to whistleblowers. Defendant states that in light of the judge's rulings, the defense refrained from raising the whistleblower motive thereafter. However, the objection to defense counsel's question was merely that it assumed facts not in evidence. (Doc. 271-2, p. 20). At side-bar the court stated that the elicited testimony was irrelevant and was hearsay that could perhaps be brought out if the whistleblower testifies, but not by the witness that was on the stand at that time. (Doc. 271-2, p. 21). Defense counsel again tried to elicit testimony about reports of problems on the vessel and sought to use a document concerning a whistleblower report to refresh the witness's memory. Upon request for a side-bar a lengthy discussion on the subject was held in which the court told defense counsel that if the defense raised the subject, it would open the door for the government to elicit testimony concerning the rest of the document, including information regarding reports of the discharge of oil. (Doc. 271-2, pp. 23-26). Defense counsel was not prohibited from raising the issue further, but was advised that it had to be done

properly and that doing so could open the door to testimony that was the subject of a motion in limine by the defense.

To the extent the defendant is objecting to the prosecution's general assertion in closing that the defense had presented multiple theories, it is unclear on what basis the defendant claims it was improper. As the government points out, defendant has not cited any legal authority for finding it improper and defense counsel had argued in closing that the government had shifted theories during the case. The court finds it was not plain error for the prosecution to respond that the defense had multiple theories.

As to the government's reference to a whistleblower motive, the term whistleblower was used by defense counsel in an attempt to elicit testimony during the trial. Counsel's use of the term was not evidence and no answer was ever given. However, there was testimony immediately prior to defense counsel's use of the term "whistleblower" regarding reports of problems in habitability on the ship, and the witness testified that there may have been "some pollution-at-sea concerns onboard that ship." (Doc. 271-2, TR 19 16-22). Defense counsel did not pursue the issue further, apparently because the defense did not want to open the door for the government to get into the issue, but the court finds it was not clearly unreasonable for the government to briefly mention it in closing argument. Moreover, the court finds that any error did not affect the defendant's substantial rights or seriously affect

the fairness, integrity or public reputation of judicial proceedings.  The court finds that the outcome of the trial would have been the same if the prosecutor had not mentioned the whistleblower theory in closing.

The court further finds that the result would have been the same if the prosecution had refrained from all of the statements objected to by defendant.  As previously mentioned, defense counsel did not even object to the statements during the trial and did not request any curative instructions.  The prosecution's alleged improprieties, even when viewed together, did not constitute plain error and clearly did not rise to the level of "infecting the trial with unfairness" as claimed by defendant.  Accordingly, the court finds that defendant has not shown that the interest of justice requires a new trial under FED.R.CRIM.P. 33.

## CONCLUSION

For the reasons stated above, the motion of defendant, Prastana Taohim, for New Trial (Doc. 259), is **DENIED**.

**DONE and ORDERED** this 9th day of July, 2012.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE